UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
CENTRAL DIVISION

| | |
|---|---|
| DINA BAKER and KEN BAKER, and DAVID CUNNINGHAM, individually and on behalf of others similarly situated, | ) ) ) **CASE NO.:** |
| Plaintiffs, | ) **CLASS ACTION** ) ) **JURY TRIAL DEMANDED** |
| vs. | ) ) |
| HOME DEPOT U.S.A., INC. | ) ) |
| Defendant. | ) |

**CLASS ACTION COMPLAINT**

Plaintiffs, Dina and Ken Baker, and David Cunningham, individually and on behalf of all others similarly situated, for their class action complaint against Defendant, allege as follows.

**I. NATURE OF THE ACTION**

1. This action arises from Defendant's role in the nationwide production and sale of wood treated with Chromium Copper Arsenate, also known as "CCA."

2. The wood treated with CAA is referred to as "CCA treated wood" or the "product" herein, and in the trade is known as "CCA treated wood," "green lumber," "Osmose" lumber, and "pressure treated lumber" which identify the wood as treated with CCA and therefore impervious to rot with a virtual unlimited useful safe life for use in residential structures with which adults, children and domestic animals would come into contact.

3. The treatment impregnates wood with a combination of arsenic. copper and hexavalent chromium. Arsenic and hexavalent chromium are known and at all times relevant hereto were known to the defendant to be carcinogens and pathogens that cause cancer in humans.

4. The defendant promoted the manufacture of and planned to be and acted as a principal retail outlet for CCA treated wood for residential use when it knew or should have known that CCA treated wood was not safe for the principal use for which defendant compelled the manufacture of and for which defendant sold the material.

5. The defendant promoted the treatment of the wood, purchased the treated wood on the open market and sold the treated wood to consumers adopting the characterizations of the product made by the manufacturers of the product to the consuming public and also making express warranties to the consuming public as a critical part of defendant's marketing program, that the CCA treated wood would last "a lifetime," or in excess of 20 years. would need little or no maintenance, and not need to be coated or sealed to prevent contact with humans or domestic animals and was safe for use as decks and other structures with which humans and domestic animals could come into contact. The fact that defendant's method of marketing the product was so successful was also a reason so much of the product was manufactured and sold, despite the existence of safe alternatives.

6. In 2002, the "industry" allegedly "decided" that the hazards inherent in CCA treated wood were such that the material should no longer be

2

sold for use in residential construction. Two class action lawsuits had been filed and pressure was being brought to bear from the Consumer Product Safety Commission ("CPSC") and the Environmental Protection Agency ("EPA") to ban sale of the product because of the risk of personal injury it presents.

7. When the defendant published a press release advising the consuming public of the cessation of the marketing and sale of CCA treated wood on February 14, 2002, the defendants noted that the business of manufacturing and applying the chemicals was worth "$6.4 billion Cdn in the US" and continued to represent, in essence affirming the express warranties and misrepresentations made to induce the consuming public to buy the product at the time of the original sale of all the product, that the product was safe for use as decks, picnic tables and play sets in residential applications, in effect continuing to mislead the consuming public about the inherent dangers of CCA treated lumber.

8. Despite the agreement with the EPA to cease selling CCA treated lumber, it was not until December, 2003, that the defendant ceased selling the product.

9. In the summer of 2011, the EPA, CPSC and USDA Forest Products Laboratory published a document entitled "Guidance for Outdoor Wooden Structures – Decks Playgrounds Picnic Tables – What you should know" (hereinafter called the "Guide") eight years after defendant stopped selling CCA for residential use, which provides as follows:

3

If your residential wood structure was built before 2004 and is not made of cedar or redwood, it was most likely constructed with wood pressure-treated with Chromated Copper Arsenate (CCA). CCA is a chemical preservative comprised of arsenic, chromium, and copper. First produced decades ago, it was a major source of treated-wood for decks, playgrounds, and other outdoor residential structures until 2004.

CCA, like other pesticides, is registered under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) by the U.S. Environmental Protection Agency (EPA). In 2001, the U.S. Consumer Product Safety Commission (CPSC) and the EPA received several petitions to ban CCA use in playground equipment because of potential human health concerns about exposure to chemical residues from contact with the wood and surrounding soil. Exposure concerns centered around arsenic, an element that can increase the risk of certain types of cancers.

Manufacturers submitted requests to EPA to voluntarily cancel *most* residential uses effective December 31, 2003. Although a ban on CCA-treated wood was never imposed, the voluntary cancellations prohibited CCA treatment on wood intended for outdoor residential structures such as decks and playgrounds.

The voluntary cancellations did not address the potential exposure to chemical residues from existing CCA-wood structures, nor does the EPA require the removal of structures made with CCA-treated wood. Wood treated with CCA is still available primarily for industrial use, and CCA is also still registered with EPA for the treatment of wood products that may be found in residential settings (shakes, shingles, and structural members other than decks) as well as products found in agricultural/commercial settings (posts or sawn timbers for fence posts or structural supports).

10.     The Guide also provides:

**Use/handling precautions:**

**Once identified, take precautions to minimize exposure to chemical residues and follow these guidelines:**

» Work outdoors and wear protection (e.g., goggles, gloves, and dust mask) when sawing, cleaning, or handling CCA-treated wood.

» Thoroughly wash hands and all exposed body parts with soap and water after handling or playing on CCA-treated products.

» Launder clothing worn when handling CCA-treated wood separately.

» Children should not eat while on CCA-treated playgrounds as arsenic may be transferred to the mouth.

» Do not allow children or pets to play in soil or other material under or near CCA-treated decks or structures.

» CCA-treated wood should not be used where routine contact with food or animal feed can occur, including areas used to plant vegetables, fruits, herbs, etc.

4

If you have a garden vegetable planter constructed with CCA-treated wood, install a plastic liner before filling the planter with soil to reduce exposure to CCA.

» Do not use CCA-treated wood for mulch, cutting boards, counter tops, bee hives, compost, structures, or containers for storing human food or animal feed.

» Never use treated wood in areas where it may come into direct or indirect contact with drinking water.

**Cleaning/Maintenance**

» Do not apply harsh cleaning products such as bleach, sodium hydroxide, sodium percarbonate, oxalic acid, and citric acid to CCA-treated wood.

» Avoid sanding or power washing CCA-treated wood.

» Regular application of an oil- or water-based penetrating coating (stains sealants) to CCA-treated wood structures may reduce potential exposure to chemical residues.

When defendant sold the product to the consuming public, it never advised, represented or otherwise suggested that any of the foregoing work, expense or effort would have to be undertaken to maintain or otherwise enable the consumer to use the product for the intended use, and the plaintiffs did not become aware that such efforts and related expense would have to be made to use the product until after the Guide was published.

## II. JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d). The citizenship of Plaintiffs and one or more proposed class members is different from the citizenship of Defendant, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391. Plaintiffs obtained the CCA treated wood at issue from Defendant in this district, and Defendant conducts substantial business in this district. Plaintiffs reside in the district and have been subjected to the wrongs complained of herein in the district.

## III. PARTIES

13. Plaintiffs, Dina Baker and Ken Baker, are citizens of the State of Illinois. The Bakers reside in Skokie, Illinois. The Bakers own property on which a CCA treated wood deck has been constructed with the wood purchased from Home Depot.

14. Plaintiff David Cunningham is a citizen of the State of Illinois. He resides in Chicago, Illinois. Mr. Cunningham owns property on which a CCA treated wood deck has been constructed with the wood purchased from Home Depot.

15. Defendant, Home Depot U.S.A., Inc., is a citizen of the states of Delaware and Georgia. Defendant is incorporated in Delaware, and it is headquartered in Atlanta, Georgia. Defendant is retailer of home improvement and construction products and services. Defendant has stores in all fifty states. Defendant describes itself as "the world's largest home improvement specialty retailer."

## IV. CLASS ALLEGATIONS

16. Plaintiffs bring all claims pursuant to Rule 23 of the Federal Rules of Civil Procedure.

6

17. Plaintiffs bring this class action lawsuit on behalf of a Class made up of those individuals who own real estate that has a structure with surfaces exposed to the weather, regardless of whether the material has been sealed, built from CCA treated wood that was purchased from a Home Depot outlet at any time between January 1, 1991 to December 31, 2003 and seek damages and other relief only for property damage. No personal injury claims will be made in this case.

18. The proposed Class excludes the officers of Defendant and any entity in which Defendant has a controlling interest, as well as the Judge presiding over this case and his or her family.

19. This case meets the requirements of Fed. R. Civ. P. 23(a)(1) because the Class and Sub-Class are so numerous and geographically dispersed that joinder of all members is impracticable. While the exact number of Class and Sub-Class members cannot be ascertained by Plaintiffs at this time, the Class contains more than a thousand members.

20. This case meets the requirements of Fed. R. Civ. P. 23(a)(2) and (b)(3) because it presents questions of law or fact common to the Plaintiffs and the Class, and because those common questions predominate over any questions that might affect only individual Class members. The common questions of law and fact include, but are not limited to:

(a) Whether defendants promoted the use and production of CCA treated wood for use by the consuming public in decks and other structures where it is currently exposed so it can be touched by humans and domestic animals in the

7

ordinary course of the use of the structures and decks, and leach toxic chemicals into adjacent soil.

(b) Whether defendant knew when it was promoting the manufacture, sale and use of CCA treated wood that the product posed a reasonable risk of injury to the consuming public when used in the normal course for which the CCA treated wood was being sold and sold the material without reasonable warnings.

(c) Whether defendant adopted and repeated and adopted the representations and warranties made by the manufacturers of CCA treated wood that the material would last "for generations" and in excess of 20 years in normal use as intended, intending to induce the consuming public to rely on said representations.

(d) Whether defendant represented and or warranted to the consuming public that CCA treated wood was safe for use in structures with which humans and domestic animals come in physical contact without need of sealants or other coatings.

(e) Whether CCA treated wood is safe for uses for which defendant offered the material for sale to the consuming public under the conditions for use suggested or prescribed by defendant.

(f) Whether CCA treated wood may be coated and or sealed to prevent leaching of carcinogenic chemicals used in the treating process into surrounding soils and exposure to humans and domestic animals.

8

(g) Whether CCA treated wood breached the express and implied warranties regarding fitness for a particular purpose or warranties of merchantability, which breaches continue to this day because the material is still in place being used consistent with the warranties and representations made to the general public.

(h) Whether defendant had a continuing duty to warn the consuming public, (which duty continues to the date of this pleading and has been breached) even post sale, of the inherent dangers of CCA treated lumber when used in decks, play sets and picnic tables, or for the uses for which defendants sold and suggested that the product could be used.

21. The case meets the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiffs' claims are typical of the claims of the members of the Class as alleged.

22. This case meets the requirements of Fed. R. Civ. P. 23(a)(4) because Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have no interests antagonistic to or which irreconcilably conflict with the interests of the Class members, and Plaintiffs have retained counsel with substantial experience in class action litigation.

23. A class action is a superior method for resolving the issues presented in this case. It is the only practical method for the fair and efficient adjudication of this controversy. Because of the nature of the claims at issue, few, if any, members of the Class could otherwise afford to seek legal redress against Defendant for the wrongs complained of herein. Without a class

9

action, the Class members will continue to suffer damage to their property, unable to have recourse to the commercial entities that profited from the production and sale of the inherently dangerous product that produced the product.

## V. CCA TREATED WOOD IS INHERENTLY DANGEROUS TO HUMANS

### A. Inorganic Arsenic is a Deadly Toxin

24. The principal chemical in CCA treated wood that enables it to function as advertised is inorganic arsenic.

25. The Center for Disease Control has described arsenic as the single most dangerous substance to human health, ahead of mercury, lead, and benzene. Arsenic is a heavy metal that accumulates in the liver.

26. In simple terms, about one ounce of inorganic arsenic is potentially lethal to 101 to 145 individuals, and potentially toxic to 8,100 individuals.

27. The U.S. Environmental Protection Agency ("EPA"), the U.S. Department of Health and Human Services, and the International Agency for Research on Cancer, have determined that inorganic arsenic is a human carcinogen. The EPA also has classified arsenic as a hazardous substance.

28. At all relevant times, Defendant knew that the inorganic arsenic was a human carcinogen.

### B. Defendant Sold Wood that Contains and Leaches Inorganic Arsenic

29. Despite knowing or having reason to know of the dangers of inorganic arsenic, Defendant promoted, marketed, and sold wood that was

10

pressure-treated with, *i.e.*, that contains, inorganic arsenic which was designed to leach from the wood so it could come into contact with insects and other elements of the environment which it was intended to kill. Leaching of copper, chromium, and arsenic "must occur in order for the wood to be toxic to *the destructive organism it is being protected against.* " A 2000 study by the State University System of Florida's Center for Solid and Hazardous Waste Management determined that CCA treated wood leaches enough arsenic to routinely fail EPA toxicity levels.

30. A significant amount of arsenic is exposed on the surface of the wood, which readily rubs off on to the clothes and hands of individuals that come into contact with it, and readily washes off on to the property on which the structure containing the wood sits.

## C. The Dangers of CCA Treated Wood Are Serious and Widespread

31. On April 16, 2008, the EPA published a report stating that children who had contact with CCA treated wood play sets and decks had an increased risk of cancer caused by arsenic transferring to their hands, with resulting ingestion of the arsenic from hand-to-mouth contact.

32. CCA treated wood also contains sodium sulfate, a salt like substance, which attracts domestic and wild animals. Animals that drink water off of the surface of a CCA treated wood deck or chew the wood can suffer and have suffered fatal arsenic poisoning.

33. As of 2008, approximately 70% of single-family homes nationwide had a deck or porch made from pressure-treated wood. Based on

11

data from the American Chemistry Council, approximately 34% of CCA treated wood was used to build decks.

34. The defendant was the largest single retailer of CCA treated wood for residential use.

## D. Defendant Knew the Hazards of CCA Treated Wood When It Sold the Wood

35. Since the 1980s, Defendant has known that the CCA treated wood it was selling contained and leached arsenic and that:

- (a) exposure to the arsenic in CCA treated wood can cause chemical pneumonitis, nausea, diarrhea, abdominal distress, and cancer;

- (b) the transfer of arsenic from the surface of CCA treated wood to a child's hand results in a skin cancer risk;

- (c) arsenic compounds in CCA treated wood are acutely toxic by a subcutaneous route of exposure, including the injection of CCA treated wood splinters;

- (d) individuals with preexisting disease or a history of ailments involving the skin, kidney, liver, respiratory tract, eyes, or nervous system are at a greater than normal risk of developing adverse effects from wood-working operations with CCA treated wood;

- (d) respirators are necessary when sawing wet CCA treated wood;

- (e) in fighting CCA treated wood fires, a full-face MSHA/NIOSH approved self-contained breathing apparatus must be worn;

- (f) physicians need to treat victims for arsenic exposure; and

- (g) arsenic is stable in the environment and does not decompose over time.

12

36. Defendant also knew about the wood's arsenic content and leaching properties but chose not to so advise consumers.

## E. Defendant Marketed and Sold CCA Treated Wood for Residential Use and Concealed the Hazards

37. Despite its awareness of the hazards that CCA treated wood presents, defendant marketed and sold the wood for residential use, *e.g.*, for building decks, picnic tables, play sets, patios and balconies.

38. Defendant chose not to warn the consuming public that the wood contained and leached inorganic arsenic, or hazards associated with it.

39. Defendant took measures to purposefully and intentionally conceal the inherent hazard of CCA treated wood by preventing the consuming public from learning about the hazards of CCA treated wood. Defendant posted a placard in its stores stating that "CCA Treated Lumber is Safe!" The placard purports to quote the U.S. EPA, the President of American Council on Science and Health, the Director of Georgia Poison Control Center, and a Board certified medical toxicologist. The placard ended with the following misrepresentation: "CCA, the main Component of our Pressure Treated Lumber has been proven safe and effective for over 60 years!"

40. Defendant trained its in-store personnel to tell customers that the wood was extremely leach-resistant, that the EPA has found CCA treated wood to be acceptable playground equipment and decks, that it was safe to prepare food on CCA treated picnic tables, and that there was no problem with children eating food that has come into contact with a CCA treated deck.

13

**F. CCA Treated Wood Is So Dangerous It Has Been Taken Off The Market For Residential Uses For Which Defendant Specifically Sold The Product Prior to 2004**

41. On January 3, 2003, the European Commission issued a directive prohibiting the use of CCA treated wood for residential or domestic construction, regardless of the purpose. The directive applied to all 25 EC countries.

42. At least several other countries, including Switzerland, Vietnam and Indonesia, issued outright bans on the use of CCA or arsenic as a wood preservative.

43. From 1987 to 2007, several states passed legislation restricting the use of CCA treated wood.

44. In the United States, CCA treated wood was removed from the market for residential use as of December 31, 2003.

45. The EPA described this development as "a positive step, particularly for our nation's children [because] [t]he Agency believes that reducing the potential residential exposure to a known human carcinogen is desirable." 68 Fed. Reg. 17366, 17367 (April 9, 2003). The EPA further noted that "[t]his transition affects all future residential uses of wood treated with CCA, including wood used in playground structures, decks, picnic tables, landscaping timbers, residential fencing, patios, walkways and boardwalks." *Id.*

**G. Plaintiffs' Own CCA Treated Wood Decks**

46. The Bakers and Mr. Cunningham had decks built on their properties that are made with CCA treated wood purchased from Defendant.

14

47. The Bakers learned that the CCA treated wood used to build their deck contained arsenic, and the hazards of the CCA treated wood, in late 2008.

48. Mr. Cunningham did not learn that the CCA treated wood used to build his deck contained arsenic, or of the hazards of the CCA treated wood, until 2010.

## VI. CLAIMS FOR RELIEF

### Count I
### (Strict Liability – Design Defect)

49. Plaintiffs re-allege the above allegations, as if fully set forth herein.

50. The CCA treated wood sold by Defendant exists in a condition that makes it unreasonably dangerous. The wood contains inorganic arsenic, a lethal toxin, which can be absorbed by humans and domestic animals on contact and leaches this toxin onto its surface and into the surrounding environment in sufficient quantities so as to exceed state prescribed limits.

51. As a proximate result of the representations defendant made and the manufacturers of the material which defendant either adopted and based its marketing plan on, Plaintiffs and the Class acquired the CCA treated wood from Defendant.

52. Among other things, their property has been contaminated with arsenic, and they have been and continue to be exposed to a carcinogen. They will be compelled to incur costs to protect themselves from the danger inherent in the product.

15

## Count II
### (Strict Liability – Failure to Warn)

53. Plaintiffs re-allege the allegations in 1 through 52 as if fully set forth herein.

54. The CCA treated wood sold by Defendant contains a condition that makes it unreasonably and or inherently dangerous if used as suggested or intended. The wood contains inorganic arsenic, a lethal toxin, and it leaches this toxin onto its surface and into the surrounding environment.

55. The defective condition of the CCA treated wood existed at the time it left Defendant's control.

56. The defendant had a duty to warn the consuming public of the dangerous propensities of the product and the potential for foreseeable injury that would occur in the absence of a warning, even post sale.

57. The defendant knew that the CCA treated wood contained and leached inorganic arsenic, a deadly toxin. Defendant also knew or should have known that the failure to disclose this information or provide the consuming public with directions for use and handling of the product could reasonably and foreseeably result in harm.

58. Defendant did not warn purchasers of the CCA treated wood about its defective condition or the consuming public. To the contrary, it hid the truth by posting signs stating that the wood was safe, and by training its in-store personnel to tell potential purchasers of the wood that the wood does not leach pesticide.

59. As a proximate result of the defect and failure to warn, or give post sale warnings, Plaintiffs and the Class acquired the CCA treated wood from Defendant and were injured. Among other things, their property has been contaminated with arsenic, and they have been and continue to be exposed to a carcinogen.

### Count III
### (Negligence – Defective Product)

60. Plaintiffs re-allege the allegations in 1 through 59, as if fully set forth herein.

61. The CCA treated wood sold by Defendant is unreasonably dangerous. The wood contains inorganic arsenic, a lethal toxin, and it leaches this toxin onto its surface and into the surrounding environment.

62. Defendant has a duty to sell reasonably safe products and provide warnings to the consuming public about the hazards of products it sells.

63. Defendant breached that duty by selling CCA treated wood because it knew or should have known that the product was unreasonably dangerous for the use to which the consuming public put the product and failed to provide appropriate, reasonable warnings of the hazards of use as suggested by defendant.

64. As a proximate result of defendant's negligence, Plaintiffs and the Class members acquired the CCA treated wood and were injured. Among other things, their property has been contaminated with arsenic, and they have been and continue to be exposed to a carcinogen. They have to incur expenses

17

to maintain the product beyond what they could have reasonably anticipated when they purchased the product.

## Count IV
### (Negligence – Failure to Warn)

65. Plaintiffs re-allege the allegations in 1 through 64 as if fully set forth herein.

66. The CCA treated wood sold by Defendant is unreasonably dangerous for its intended use. The wood contains inorganic arsenic, a lethal toxin, and is designed to and does leach arsenic onto its surface and into the surrounding environment.

67. Defendant knew about the dangerous condition of the product before it sold the product and took steps to hide from consumers to which it sold the product the fact that the product leached inorganic arsenic and was inherently dangerous if used for the purpose for which defendant sold the product and in the manner defendant suggested the product be used.

68. Defendant also knew or should have known that the failure to warn the plaintiffs or otherwise disclose this information to the consuming public, post sale, could result in harm.

69. Defendant breached its duty to warn consumers of the hazards of owning CCA treated wood and using it as sold by defendants by selling CCA treated wood without warning potential purchasers that it contained inorganic arsenic, and that it is designed to leach inorganic arsenic or that it was unfit for the ordinary intended use for which consumers were purchasing the product and by failing to provide post sale warnings as the scientific evidence

18

regarding the hazards became more clear and definite regarding the potential hazards.

70. As a proximate result of Defendant's negligence. Plaintiffs and the Class acquired the CCA treated wood from Defendant and were injured. Among other things, their property has been contaminated with arsenic, and they have been and continue to be exposed to a carcinogen.

## Count V
## (Violation of Consumer Protection Laws)

71. Plaintiffs re-allege the allegations in 1 through 70, as if fully set forth herein.

72. This is a claim for damages for Defendant's violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). 815 ILCS 505/1, *et seq.* and similar laws of other states.

73. Section 2 of the ICFA prohibited Defendant from engaging in any "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense. false promise, misrepresentation or the concealment. suppression or omission of any material fact, with intent that others rely upon the concealment. suppression or omission of such material fact." 815 ILCS 505/2.

74. Defendant's conduct as alleged herein occurred in the course of trade or commerce.

75. Defendant knew that the CCA treated wood it was selling contained and leached inorganic arsenic, a deadly toxin and as such was not fit for its intended purpose.

19

76. Defendant engaged in and continues to this day to engage in a deceptive practice by not disclosing and otherwise concealing that its CCA treated wood leached inorganic arsenic and unless specific expensive remediation measures are taken is inherently dangerous for use as it was intended.

77. Defendant intended that its customers would rely on its omissions, to induce them to purchase CCA treated wood.

78. Defendants intended to lull consumers into believing that there were no hazards associated the wood, that the wood does not present acute and chronic risks of adverse health effects to the Plaintiffs, or pose an imminent threat of endangerment to human health and their property.

79. Defendant intended to mislead and did in fact mislead the plaintiffs and members of the Class, who, had they known the truth, would not have purchased CCA treated wood or allowed a deck made from the wood to be built on their properties.

80. As a result of Defendant's actions, Plaintiffs and the Class were damaged. They acquired wood they would not have bought, their property has been contaminated with arsenic, they have been and continue to be exposed to a carcinogen, they must pay the cost of either removing the wood or sealing it to prevent further leaching, and they must pay the cost of soil remediation for their property.

20

## Count VI
### (Violation of the Magnuson-Moss Act)

81. Plaintiffs re-allege the allegations in 1 through 80 as if fully set forth herein.

82. The Magnuson-Moss Warranty Act provides for a civil action by consumers for failure to comply with implied warranties arising under state law. *See* 15 U.S.C. § 2310(d)(1).

83. Plaintiffs and the members of the Class are "consumers" under 15 U.S.C. § 2301(3) because each of them either bought the CCA treated wood or the wood was transferred to them during the warranty period applicable to the CCA treated wood.

84. The CCA treated wood is a "consumer product" under 15 U.S.C. § 2301(1) because it is tangible personal property that defendant has sold in commerce for personal, family or household purposes.

85. Defendant is "supplier" and "warrantor" under 15 U.S.C. § 2301(4) and (5). During the relevant time period, Defendant was in the business of selling CCA treated wood, and Defendant was obligated under an express and implied warranty.

86. Defendant expressly and impliedly warranted that the CCA treated wood was fit for its ordinary purposes and for the purpose for which defendant sold it, *i.e.*, to construct decks for residential use.

87. CCA treated wood is not fit for constructing decks for residential use because it contains and leaches a deadly toxin.

88. As a result of Defendant's sale of the CCA treated wood, Plaintiffs and Class were damaged. They acquired a product which contaminated their property with arsenic, have been and continue to be exposed to a carcinogen,

21

must pay the cost of either removing the wood or sealing it to prevent further leaching, and may have to pay the cost of soil remediation for their property.

## Count VII
### (Breach of Implied Warranty)

89. Plaintiffs re-allege the allegations in 1 through 88, as if fully set forth herein.

90.   Defendant is a merchant of CCA treated wood.

91.   During the relevant time period, Defendant was in the business of selling CCA treated wood.

92. In selling CCA treated wood, Defendant impliedly warranted that the wood was fit for its ordinary purpose, *i.e.*, constructing decks for residential use, would last for generations and in any event more than 20 years.

93. CCA treated wood is not fit for constructing decks for residential use because it contains and leaches arsenic and hexavalent chromium.

94. As a result of Defendant's sale of the CCA treated wood, Plaintiffs and Class were damaged. They have been and continue to be exposed to a carcinogen, they must pay the cost of either removing the wood or sealing it to prevent further leaching as well as other costs arising from the need to carefully handle the product to prevent personal injuries, and they must pay the cost of soil remediation for their property.

## Count VIII
### (Breach of Contract)

95.   Plaintiffs re-allege the allegations in 1 through 94, as if fully set forth herein.

22

96.     Defendant promised and expressly warranted that CCA treated wood that it sold was virtually impervious to rot. had a safe useful life in excess of 20 years and was safe for use in decks. play sets and picnic tables with which humans and domestic animals would come in contact. and would so perform with limited maintenance without coatings in excess of 20 years.

97.     Defendant breached the express warranties.  CCA treated wood is not safe for prescribed use and must be coated or otherwise sealed to prevent contact with humans and domestic animals because it contains and leaches arsenic and hexavalent chromium for its entire useful life.

98. As a result of defendant's breach, Plaintiffs and the Class have been damaged.  Their property has been contaminated with arsenic.  They have been and continue to be exposed to a carcinogen. They must pay the cost of either removing the wood or sealing it to prevent further leaching. They must pay the cost of soil remediation for their property. They must incur expenses to maintain the product and take precautions to work with the product which were not contemplated when they bought the product.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs on behalf of themselves and all others similarly situated, pray for judgment against Defendant and request as follows:

1.     For an Order, pursuant to Fed. R. Civ. P. 23, certifying this Class, and appointing Plaintiffs and their attorneys as counsel for the Class and Subclass;

2.     For an order directing Defendant to notify all members of the Class that CCA treated wood contains inorganic arsenic, a carcinogen, and that the wood leaches inorganic arsenic, and what steps should be taken to avoid or remediate the hazards associated with the wood;

3.     For actual damages and/or or revocation of acceptance of the wood and/or restitution;

4.     For an award of punitive damages;

5.     For an award of attorneys' fees and costs;

6.     For pre-judgment interest and costs; and

7.     For such other and further relief as this Court deems just.

24

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

/s/ _____

One of the Plaintiffs' Attorneys

Dated: _Sept 26_, 2011

Lawrence Walner
Michael S. Hilicki
Aaron R. Walner
THE WALNER FIRM, LTD.
20 North Clark Street
Suite 2450
Chicago, Illinois 60602
(312) 201-1616 – Phone
(312) 201-1538 – Fax